## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| **JAMAURA WOODS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Case No.** |
| ) | |
| **ALLEGIS GROUP, INC.,** ) | |
| ) | |
| **ALLEGIS GLOBAL** ) | |
| **SOLUTIONS, INC.,** ) | |
| ) | |
| **AEROTEK, INC.,** ) | |
| ) | |
| and ) | |
| ) | |
| **ABBOTT LABORATORIES,** ) | |
| **INC.,** ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jamaura Woods, by and through undersigned counsel, hereby complains against Defendants Abbott Laboratories, Inc., Allegis Group, Inc., Allegis Global Solutions, Inc., and Aerotek, Inc. as follows:

## INTRODUCTION

1.     This is an action for violation of the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206(a), 207(a) and 215(a)(3); Maine's Minimum Wage Law ("MWL"), 26 M.R.S. §§ 664 and 670; Maine's Timely and Full Payment of Wages Law ("TFPWL"), 26 M.R.S. §§ 621-A and 626; Maine's Rest Break Law (25 M.R.S. §§ 601-602) and the common law.

1

2.     This action also alleges discrimination and retaliation against Plaintiff Jamaura Woods, a black woman. Plaintiff alleges employment discrimination based on her race, color, ethnicity, and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.* ("Title VII") and the Maine Human Rights Act, 5 M.R.S. § 4571 *et seq.* ("MHRA"). She further alleges retaliation in violation of the Maine Whistleblowers' Protection Act ("WPA"), 26 M.R.S. §§ 831 *et seq.*

## THE PARTIES

3.     Plaintiff Jamaura Woods ("Ms. Woods"), is an individual residing in the City of Auburn, County of Androscoggin, and State of Maine.

4.     Defendant Abbott Laboratories ("Abbott") is a multinational medical device and health care company with headquarters in Chicago and locations throughout the United States, including in Scarborough and Westbrook, Maine. Abbott is a corporation duly authorized to do business in the State of Maine, operating human specimen laboratories in various locations, with its principal place of business and main campus located in Scarborough, Maine, where Plaintiff worked.

5.     Defendant Allegis Group, Inc. ("Allegis Group"), is an international talent management firm with a principal place of business in Hanover, Maryland. Allegis Group is the parent company of Allegis Global Solutions, Inc., and Aerotek, Inc.

6.      Defendant Allegis Global Solutions, Inc. ("AGS"), is a Managed Service Provider. AGS is a subsidiary of Allegis Group. All communication from Abbott went through AGS to Defendant Aerotek, Inc.

7.      Defendant Aerotek, Inc. ("Aerotek"), is the temp agency that employed Ms. Woods and assigned her to work at Abbott. Aerotek is a subsidiary of Allegis Group.

8.      Upon information and belief, based on the interrelated ownership, management, and control of Defendants Allegis Group, AGS, and Aeroek, these three Defendants were an integrated and/or joint employer of Plaintiff.

## JURISDICTION AND VENUE

9.      This Court has federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

10.     Venue is proper within this Court because discriminatory and retaliatory conduct as well as the wage and hour violations and retaliation alleged herein occurred at Plaintiff's place of employment, where Abbott Laboratories has a manufacturing facility, City of Westbrook, County of Cumberland, and State of Maine.

## BACKGROUND FACTS

11.     Ms. Woods was hired as temp employee by Aerotek and began working an assignment for Abbott as a Production Specialist in Westbrook, Maine on August 3, 2020.

12.     In response to the pandemic, Abbott Laboratories created a "pop up" location to produce Covid-19 test kits.

13.     Ms. Woods' job duties as a Production Specialist were to create and assemble Covid-19 rapid antigen tests.

14.     At all times during her employment, Ms. Woods performed her job duties satisfactorily.

15.     Given the significant demand for these rapid antigen tests, Ms. Woods was asked to work overtime on many occasions.

16.     Ms. Woods worked overtime often enough that she was eligible for a bonus in September and October of 2020.

17.     Ms. Woods is a black, African American woman.

18.     A vast majority of Ms. Woods' coworkers working at Abbott's Westbrook facility were also people of color, many of whom spoke English as a second language or had a limited understanding of the English language.

19.     The working conditions at Abbott's Westbrook facility were appalling— so bad that some Abbott employees who worked in Engineering and Quality Assurance compared it to it a concentration camp. After touring the facility, some of these employees reported to management that what they observed was so appalling that they were upset about the working conditions. Management responded that they needed to deliver the product.

20.     The Westbrook facility became known as the "Wild Wild Westbrook" because of the harsh working conditions the Production Specialists on the line endured.

21.     Ms. Woods and other Production Specialists, along with those assembling Covid-19 rapid tests, worked long hours and were often denied the fifteen minute and thirty-minute breaks they were entitled to by law if they did not meet unfeasible quotas.

22.     The teams that worked on assembling Covid-19 test kits were made up of groups of three at a table. Abbott used red, green, and yellow solo cups as indicators of production speed. The supervisor would place a red or yellow solo cup on the desk if the team did not meet its quota, indicating the employees were not allowed a break. If the employees met their quota, the supervisor would place a green solo cup on the table, indicating they were productive enough to receive their break.

23.     These employees, including Ms. Woods, were also denied bathroom breaks. Some employees resorted to urinating in closets.

24.     When Ms. Woods and her coworkers were permitted to use the bathroom, an attendant would monitor their time in the bathroom, yelling at them to return to the line.

25.     Employees assembling the Covid-19 tests were often so tired on the line from working long shifts without breaks that they resorted to watching pornography while working to stay awake.

26.     Ms. Woods was so exhausted from her series of shifts working without breaks, that on one occasion she fell asleep at the wheel of her car, waking up just in time to avoid an accident.

27.     Abbott also required, permitted, or suffered Ms. Woods and others on occasion to work after her shift without pay. Ms. Woods experienced occasions where her supervisor would require her to stay after her shift to meet a quota without pay. Often these violations of law occurred in retaliation for employees complaining about the lack of breaks or the working conditions.

28.     Abbott was responsible for reporting hours worked to Aerotek.

29.     The physical conditions of Abbott's Westbrook location were also terrible. The building itself was freezing cold, there were no windows to allow light in, and employees assembling tests were packed tightly together.

30.     Upon information and belief, many of the Covid-19 tests assembled in Westbrook did not meet quality standards due to defects, meaning the tests were likely to produce invalid or inaccurate results, but Abbott shipped the tests to be sold over the objection of Quality Assurance Specialists.

31.     Ms. Woods reported her concerns to a manager for Abbott named Jeffrey. She told Jeffrey about the poor working conditions, such as not being allowed to take breaks, and that employees were being threatened and screamed at daily to stop complaining about breaks or they would be fired. Ms. Woods also reported to Jeffrey that employees were in fear of further reporting issues to management

because if they complained they were required to stay past their scheduled shift. Ms. Woods also complained of being monitored at the bathroom entrance.

32.     Ms. Woods repeatedly complained that Abbott did not pay her for the additional hours that she worked. In September, Ms. Woods noticed that her pay did not reflect the full amount of hours she worked. She therefore made a specific and direct complaint to another supervisor at Abbott named Samuel about these pay practices.

33.     After Ms. Woods complained to Samuel about Abbott's pay practices, management treated her poorly in front of line leaders and her coworkers.

34.     When Samuel did nothing to correct the missing pay Ms. Woods complained about, she elevated her complaint to Samuel's supervisor, Jeff. In addition to her own missing pay, Ms. Woods also reported to Jeff that others were not being paid for all of the work they performed. In response, Jeff told Ms. Woods that if she continued to complain about her missing pay, she would be fired.

35.     Despite the repeated threats of termination, Ms. Woods continued to advocate for herself and her coworkers and reported the missing pay to Human Resources. Abbott told Ms. Woods' she was fired the following day, November 2, 2020.

36.     Abbott informed AGS that Jamaura Woods had been terminated.

37.     On November 11, 2020, Lori from AGS informed Danielle Pond of Aerotek that Jamaura Woods "should not return to Westbrook" and that Ms. Woods had "been terminated due to attendance issues."

38.     Defendant Aerotek admitted that during Ms. Woods' employment there were some discrepancies in pay for Product Specialists assigned to Abbott's pop-up facility.

39.     In addition to complaining to supervisors, management, and human resources at Abbott, Ms. Woods also reported these workplace issues to Cameron Van Hoek from Aerotek. Van Hoek did not respond to Ms. Woods' complaints.

40.     In October of 2020, a recruiter from Aerotek came to the Westbrook location. In addition to Aerotek representatives personally observing the situation, Ms. Woods and a few of her coworkers spoke with the representative from Aerotek about the issues they were having with pay, lack of required breaks, and poor working conditions.

41.     Defendants claim that Ms. Woods was terminated on November 11, 2020, for failing to show up to her shifts since October 31, 2020. However, this allegation is false. Ms. Woods last worked on November 2, 2020, when she was informed of her termination. She did not report back to her shifts at Abbott after November 2, 2020, because she was told her employment was terminated.

42.     Defendants engaged in willful, knowing discrimination and retaliation against Ms. Woods on the basis of her race, color, ethnicity, and national origin, as well as her protected whistleblowing activity.

43.     Ms. Woods was terminated in retaliation for opposing a practice made unlawful by the FLSA, Title VII, Section 1981 and state law equivalents.

44.     Defendants engaged in the above-described violations of Federal and State law willfully and knowingly.

### COUNT I – UNPAID OVERTIME UNDER THE FLSA
**(29 U.S.C. § 207)**

45.     Plaintiff repeats the allegations contained in Paragraphs 1 through 42 as if fully stated herein.

46.     Defendants employed Plaintiff, and knowingly or willfully failed to pay her overtime wages, within three years of filing this Complaint.

47.     Defendants are a covered employer under the FLSA and an industry engaged in interstate commerce within the meaning of the FLSA, with an annual sales volume that exceeds $500,000.00.

48.     For all of the reasons stated above, Defendants failed to pay Ms. Woods 1.5 times her regular rate of pay (time and a half) for all hours worked over 40 in one workweek.

49.     Defendants furthermore failed to keep accurate payroll records indicating the true number of hours Ms. Woods worked each week.

50.     As a result of Defendants' failure to pay overtime wages due, Ms. Woods is entitled to unpaid overtime as well as an additional amount as liquidated damage, plus costs of suit and attorney's fees.

WHEREFORE, Plaintiff Jamaura Woods requests that the Court award her damages in the form of unpaid overtime, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT II – UNPAID OVERTIME UNDER MAINE'S MINIMUM WAGE LAW
### (26 M.R.S. § 664)

51.     Plaintiff repeats the allegations contained in Paragraphs 1 through 48 as if fully stated herein.

52.     For all of the reasons set forth in Count I above, Defendants have violated the Maine Minimum Wage Law and Plaintiff is entitled to unpaid overtime as well as an additional amount as liquidated damages, plus costs of suit and attorney's fees.

WHEREFORE, Plaintiff Jamaura Woods requests that the Court enter judgment in her favor and against Defendant and award her damages in the form of unpaid overtime, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT III – RETALIATION UNDER THE FLSA
### (29 U.S.C. § 215(a))

53.     Plaintiff repeats the allegations contained in Paragraphs 1 through 50 as if fully stated herein.

54.     Plaintiff repeatedly engaged in protected activity under Section 215(a)(3) of the FLSA by opposing a practice made unlawful by the FLSA, which was sufficiently definite to put Defendants on notice of Plaintiff's claim to unpaid wages, overtime, and/or minimum wages.

55.     Shortly after Ms. Wood's final complaint about practices made unlawful by the FLSA, Abbott discharged, discriminated, and/or took adverse action against her to which Aerotek, AGS, and Allegis Global did not remedy.

56.     As a direct and proximate result of Plaintiff lodging a complaint with Abbott, and conducting a meeting with her superiors to discuss unfair wage practices, Abbott took adverse employment action against her.

57.     Abbott's stated reason for Ms. Woods's termination was pretextual because the motivating reason behind the decision to terminate Plaintiff was the exercise of her rights under the FLSA.

58.     As a result of Abbott's retaliation against Ms. Woods in violation of the FLSA, she is entitled to unpaid wages/back pay, reinstatement, liquidated damages, plus costs of suit and attorney's fees.

WHEREFORE, Plaintiff Jamaura Woods requests that the Court enter judgment in her favor and against Defendant and award her damages in the form of unpaid wages and back pay, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

### COUNT IV – VIOLATION OF THE MAINE TIMELY AND FULL PAYMENT OF WAGES LAW ("TFPWL") (26 M.R.S. § 621-A *et seq.*)

59.     Plaintiff repeats the allegations contained in Paragraphs 1 through 56 as if fully stated herein.

60.     Defendants failed to pay Plaintiff wages owed for work she performed before and after her regular shift ended within the time provided for under Maine's Timely and Full Payment of Wages Law ("TFPWL").

61.     Defendants further failed to pay Ms. Woods all wages owed to her within a reasonable time after cessation of her employment under 26 M.R.S. § 626.

62.     Under the penalty provisions of the TFPWL, Ms. Woods is entitled to an amount equal to twice the amount of her unpaid wages, plus reasonable attorney's fees, interest, and costs of suit.

WHEREFORE, Plaintiff Jamaura Woods requests that the Court enter judgment in her favor and against Defendant and award her damages in the form of unpaid wages, liquidated damages, attorney's fees, costs and expenses, interest, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT V – FAILURE TO PROVIDE MANDATED BREAKS
### (26 M.R.S. §§ 601 and 602)

63.     Plaintiff repeats the allegations contained in Paragraphs 1 through 60 as if fully stated herein.

64.     Pursuant to 26 M.R.S. § 601, Defendants must allow Ms. Woods a 30-minute break during her shift.

65.     Defendant often failed to provide Ms. Woods with the mandated break.

66.     As a direct and proximate result of Defendant's failure to provide Plaintiff with the mandated breaks, Defendants are liable for the damages set forth in 26 M.R.S. § 602(1).

67.     As a direct and proximate result of Plaintiff lodging a complaint with Abbott and conducting a meeting with her superiors to discuss the lack of breaks, Abbott took adverse employment action against her. Defendants are liable for the damages set forth in 26 M.R.S. § 602(2).

WHEREFORE, Plaintiff Jamaura Woods requests that the Court award her damages for Defendants' violation of 26 MRS § 602, liquidated damages, attorney's

fees, costs and expenses, interest, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT VI – QUANTUM MERUIT

68.     Plaintiff repeats the allegations contained in Paragraphs 1 through 65 as if fully stated herein.

69.     Plaintiff rendered services to Defendant in furtherance of Abbott's business interests at the request and/or with the knowledge of Abbott.

70.     The circumstances surrounding Plaintiff's rendering of services to Defendant made it reasonable for Plaintiff to believe, and in fact Plaintiff did believe, that she would receive payment from Abbott for those services.

71.     Under the circumstances described above, a promise to pay must be inferred.

72.     All of the various services rendered by Plaintiff occurred under circumstances consistent with contractual relations.

73.     Under Maine law, damages owed to Plaintiff for quantum meruit have the same status as unpaid wages, entitling Plaintiff to payment of twice that amount for liquidated damages.

WHEREFORE, Plaintiff Jamaura Woods requests that the Court award her damages for quantum meruit, liquidated damages, attorney's fees, costs and expenses, interest, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT VII – UNJUST ENRICHMENT

74.    Plaintiff repeats the allegations contained in Paragraphs 1 through 71 as if fully stated herein.

75.    Plaintiff conferred a benefit on Abbott by performing services in furtherance of Abbott's business interests.

76.    Plaintiff rendered the aforementioned services with the appreciation or knowledge of Defendant of the benefit(s) conferred.

77.    Under the circumstances described above, acceptance or retention of the benefit(s) conferred to Abbott and Aerotek, without payment to Plaintiff for the value of services rendered, would be inequitable.

WHEREFORE, Plaintiff Jamaura Woods requests that the Court award her damages for Defendant's unjust enrichment, attorney's fees, costs and expenses, interest, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT VIII — DISCRIMINATORY TREATMENT BECAUSE OF RACE IN VIOLATION OF 42 U.S.C. § 1981

78.    Plaintiff repeats the allegations contained in Paragraphs 1 through 75 as if fully stated herein.

79.    During Ms. Woods' employment, the Defendants engaged in unlawful discriminatory employment practices by discriminating against her with respect to the terms and conditions thereof.

80.    The unlawful employment practices include, without limitation, disparate treatment, discipline, and harassment, false accusations and unwarranted investigations all because of Ms. Woods' race (Black or African American).

81.     The effect of these practices deprived Ms. Woods of equal employment opportunities and otherwise adversely affected her employment status because of her race.

82.     These unlawful employment practices were intentional.

83.     The unlawful employment practices were done with malice or with reckless indifference to Ms. Woods' federally protected rights.

WHEREFORE, Plaintiff Jamaura Woods respectfully requests that the Court enter judgment in her favor and against Defendants and award her damages, including economic, compensatory, liquidated, and punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT IX — RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY UNDER 42 U.S.C. § 1981

84.     Plaintiff repeats the allegations contained in Paragraphs 1 through 81 as if fully stated herein.

85.     Ms. Woods had a good faith belief that the Defendants were engaged in discriminatory conduct in violation of 42 U.S.C. § 1981.

86.     Ms. Woods engaged in protected opposition to the Defendants' unlawful employment practices by complaining about discrimination.

87.     In retaliation for Ms. Woods' opposition to what she reasonably believed to be Defendant Abbott's unlawful discrimination against her and others similarly situated, Defendant Abbott terminated the Plaintiff, resulting in Plaintiff's separation from her employment.

88.     The effect of these practices deprived Ms. Woods of equal employment opportunities and otherwise adversely affected her employment status because of her Black race and national origin (African-American).

89.     These unlawful employment practices were intentional.

90.     The unlawful employment practices were done with malice or with reckless indifference to Ms. Woods' federally protected rights.

WHEREFORE, Plaintiff Jamaura Woods respectfully requests that the Court enter judgment in her favor and against Defendants and award her damages, including economic, compensatory, liquidated, and punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT X – DISCRIMINATION IN VIOLATION OF TITLE VII
### (Hostile Work Environment)
### (42 U.S.C. § 2000e-2)

91.     Plaintiff repeats the allegations contained in Paragraphs 1 through 88 as if fully stated herein.

92.     As set forth above, Plaintiff is a member of a protected class within the meaning of Title VII based on her race, color, ethnicity, and national origin.

93.     Plaintiff was subjected to unwelcome racist remarks and harassment, as set forth more fully above, because of her race, color, ethnicity, and/or national origin.

94.     Defendant discriminated against Plaintiff on the basis of her race, color, ethnicity, and national origin by failing to properly pay her for hours worked, denying

16

her breaks she was entitled to by law, and for the poor work conditions she was subjected to.

95.    The harassment to which Abbott subjected Plaintiff was sufficiently severe and pervasive so as to alter the terms and conditions of her employment and create a hostile and abusive work environment.

96.    The harassing and abusive conduct described above were both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and Woods did in fact find the conduct hostile and abusive.

97.    Employer liability has been established here because Abbott and Aerotek knew of the conditions Plaintiff was subjected to but it did not take sufficient corrective action to eliminate the hostile work environment.

98.    Abbott and Aerotek condoned blatantly offensive and racist behavior toward Woods and her coworkers by way of subjecting them to harsh and abusive work conditions, at times without pay without remedying the work environment.

99.    The abusive environment created by Abbott was of sufficient permanence, with similar subject matter, that the discrimination can be considered a continuing violation of Title VII from 2020 to the present.

100.    Abbott created such abusive and deplorable work conditions and deprived employees of their pay knowing that the employees were vulnerable and without the resources, knowledge, or ability to stand up for themselves.

101.    Woods has suffered a tangible, adverse employment action as a result of the discriminatory conduct, practices, and policies described above.

102.    As a result of Defendant's conduct, Plaintiff has suffered damages and is entitled to the relief available under Title VII.

WHEREFORE, Plaintiff Jamaura Woods respectfully requests that the Court enter judgment in her favor and against Defendants and award her damages for Defendant's violation of Title VII, including economic, compensatory, liquidated, and punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

### COUNT XI – VIOLATION OF THE MAINE HUMAN RIGHTS ACT
### (5 M.R.S. § 4572)

103.    Plaintiff repeats the allegations contained in Paragraphs 1 through 100 as if fully stated herein.

104.    For all the same reasons set forth in Count X above, Plaintiff has suffered discrimination on the basis of her race, color, ethnicity, and national origin in violation of the Maine Human Rights Act.

WHEREFORE, Plaintiff Jamaura Woods respectfully requests that the Court enter judgment in her favor and against Defendants and award her damages for Defendant's violation of the MHRA, including economic, compensatory, liquidated, and punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

### COUNT XII – RETALIATION IN VIOLATION OF TITLE VII
### (42 U.S.C. §§ 2000e, *et seq.*)

105.    Plaintiff repeats the allegations contained in Paragraphs 1 through 102 as if fully stated herein.

106.    Defendant retaliated against Plaintiff for opposing a practice made unlawful by Title VII and the MHRA.

107.    Plaintiff made a report of racist and discriminatory behavior, practices and conditions that violated Title VII and the MHRA to Defendant, but Defendant took no corrective actions in response.

108.    Instead, Defendant took adverse action against Plaintiff because of her reports of discrimination based on her perceived race, national origin, and/or skin color such as terminating her assignment at Abbott and ignoring her request for assistance with a work-related issue.

109.    As a result of Defendant's retaliation, Woods has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Jamaura Woods respectfully requests that the Court enter judgment in her favor and against Defendants and award her damages for Defendants' violation of the Title VII, including economic, compensatory, liquidated, and punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT XIII – RETALIATION IN VIOLATION OF THE MAINE HUMAN RIGHTS ACT
### (5  M.R.S. § 4571 *et seq.*)

110.    Plaintiff repeats the allegations contained in Paragraphs 1 through 107 as if fully stated herein.

111.    For all of the reasons set forth in Count XII above, unlawful retaliation against Plaintiff has taken place within the meaning of the Maine Human Rights Act.

WHEREFORE, Plaintiff Jamaura Woods respectfully requests that the Court enter judgment in her favor and against Defendants and award her damages for Defendants' violation of the MHRA, including economic, compensatory, liquidated, and punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

### COUNT XIV –MAINE WHISTLEBLOWER PROTECTION ACT
### (26 M.R.S. § 831 *et seq.*)
### Whistleblower Retaliation

112.    Plaintiff repeats the allegations contained in Paragraphs 1 through 109 of the Complaint as if fully set forth herein.

113.    Ms. Woods engaged in protected activity within the meaning of the Maine Whistleblower Protection Act by opposing Abbott's violations of mandated break laws, opposing the abusive work conditions creating unsafe work environment, and opposing Abbott's failure to pay employees for work performed.

114.    Ms. Woods had a reasonable basis for believing that Defendant's conduct was illegal and violated state and federal regulations and law.

115.    Ms. Woods engaged in the aforementioned protected activity in good faith.

116.    Defendants took adverse action against Ms. Woods because of her protected whistleblower activity.

117.   The aforementioned instance of protected conduct bears a causal relationship to the adverse employment action(s) alleged herein.

118.   As a result of Defendants' whistleblower retaliation, Ms. Woods has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, civil penal damages, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Jamaura Woods requests that the Court award her damages in the form of lost back pay, front pay, compensatory damages, civil penal damages, punitive or liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## JURY TRIAL DEMAND

Plaintiff Jamaura Woods hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of Maine.


Dated:  December 8, 2022                    */s/ Danielle M. Quinlan*

                                            _____
                                            Danielle M. Quinlan, Bar No. 5480
                                            *Attorney for Plaintiff*
                                            White & Quinlan, LLC
                                            62 Portland Rd., Suite 21
                                            Kennebunk, ME 04043
                                            (207) 502-7484
                                            *dquinlan@whiteandquinlan.com*

                                            */s/ Laura H. White*

                                            _____
                                            Laura H. White, Bar No. 4025
                                            *Attorney for Plaintiff*
                                            White & Quinlan, LLC
                                            62 Portland Rd., Suite 21

Kennebunk, ME 04043
(207) 502-7484
*lwhite@whiteandquinlan.com*