UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JAMAURA WOODS,<br><br>    Plaintiff,<br><br>            v.<br><br>ALLEGIS GROUP INC., ALLEGIS GLOBAL SOLUTIONS, INC., AEROTEK, INC., and ABBOTT LABORATORIES, INC.,<br><br>    Defendants. | CIVIL ACTION NO. 2:22-cv-00389-LEW |

**DEFENDANTS' JOINT MOTION TO DISMISS AND COMPEL ARBITRATION AND <u>INCORPORATED MEMORANDUM OF LAW</u>**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | BACKGROUND | | 2 |
| | A. | Relationship Between The Parties | 2 |
| | B. | Plaintiff's Electronic Onboarding with Aerotek | 2 |
| | C. | The Terms of the Arbitration Agreement | 2 |
| | D. | Plaintiff Ignored Her Agreement To Arbitrate And Filed This Lawsuit | 4 |
| III. | STANDARD OF REVIEW | | 5 |
| IV. | ARGUMENT | | 6 |
| | A. | Federal Law Mandates Enforcement Of The Arbitration Agreement | 6 |
| | | 1. Plaintiff Agreed to Arbitrate Her Claims In A Valid, Enforceable, Written Agreement to Arbitrate | 6 |
| | | 2. The Arbitration Agreement Covers Plaintiff's Claims | 9 |
| | | 3. Defendants Have Not Waived Arbitration | 10 |
| | B. | Abbott and the Allegis Defendants May Enforce The Arbitration Agreement | 10 |
| | | 1. Abbott And The Allegis Defendants Are Third-Party Beneficiaries Of The Arbitration Agreement | 11 |
| | | 2. Plaintiff is Equitably Estopped From Avoiding Arbitration With Abbott and the Allegis Defendants | 12 |
| | C. | The Court Should Dismiss This Action Or, Alternatively, Stay This Action Pending Arbitration | 15 |
| V. | CONCLUSION | | 16 |

Pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, *et seq.*, Defendants Allegis Group Inc., Allegis Global Solutions, Inc., Aerotek, Inc., and Abbott Laboratories, Inc. ("Defendants") hereby move this Court for an order (1) compelling Plaintiff Jamaura Woods ("Plaintiff") to arbitrate all of the claims asserted in her Complaint and (2) dismissing this action or, in the alternative, staying these proceedings until such arbitration is completed.

I.   **INTRODUCTION**

Plaintiff was a temporary employee of Aerotek Affiliated Services, Inc., f/k/a Aerotek, Inc. ("Aerotek"), assigned to perform services at one of Aerotek's clients, Defendant Abbott Laboratories, Inc. ("Abbott"). In connection with her employment with Aerotek, Plaintiff signed a valid Mutual Arbitration Agreement (the "Arbitration Agreement") in which she agreed to arbitrate "all disputes, claims, complaints, or controversies" against Aerotek and "any of its subsidiaries, affiliates . . . clients or customers" relating to her employment with Aerotek, including discrimination and/or harassment claims, retaliation claims, claims for wages, compensation, penalties, or restitution. Notwithstanding that Agreement, Plaintiff filed the instant action, bringing claims against Defendants for alleged wage and hour violations, discrimination, and retaliation that purportedly occurred during Plaintiff's employment with Aerotek and assignment at Abbott.

Plaintiff's claims fall squarely within the broad scope of the Arbitration Agreement and are therefore subject to binding arbitration. The FAA "mandates that district courts shall direct the parties to proceed to arbitration" on issues covered by an applicable arbitration agreement. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Accordingly, the Court must (1) dismiss this action or, in the alternative, stay these proceedings until such arbitration is completed and (2) compel Plaintiff to arbitrate her claims consistent with the terms of the Arbitration Agreement.

## II.     BACKGROUND

### A.     Relationship Between The Parties

Aerotek offers temporary staffing services on a contract basis to various clients, including Abbott. *See* Declaration of Yvette VanderHaar ("VanderHaar Decl."), ¶ 2, attached hereto as **Exhibit 1**. Defendant Allegis Group, Inc. ("Allegis") is an indirect parent company of Aerotek. *Id.*, ¶ 3. Defendant Allegis Global Solutions, Inc. ("AGS" and collectively with Allegis, the "Allegis Defendants") is a subsidiary affiliate of Allegis. *Id.* Aerotek hired Plaintiff in July 2020 for placement at Abbott's Westbrook, Maine facility. *Id.*, ¶ 5.

### B.     Plaintiff's Electronic Onboarding with Aerotek

New Aerotek employees are required to electronically complete certain pre-employment electronic paperwork, including an Electronic Disclosure Acknowledgement and Mutual Arbitration Agreement. *Id.*, ¶ 6. Plaintiff electronically signed an Electronic Disclosure Agreement and the Arbitration Agreement as part of her pre-employment paperwork. *Id.*, ¶¶ 7-9, Exhibits A and B. The Electronic Disclosure Acknowledgement states, among other things, that:

> By using this website, I agree to use an electronic signature in lieu of a hand-written signature. By electronically signing any documentation contained herein, I agree to all the terms, conditions, and policies contained in these documents and agree to be bound as though I had signed these documents in writing. I further agree not to electronically sign any form without first reading it and ensuring I have completed the form to the best of my knowledge.

*See id.*, Ex. A.

On July 19, 2020, Plaintiff executed the Arbitration Agreement by electronic signature. *Id.*, ¶ 9, Ex. B.

### C.     The Terms of the Arbitration Agreement

The Arbitration Agreement makes clear that final and binding arbitration is mandatory, mutual, and the exclusive remedy of resolving all covered claims between and Plaintiff and

Aerotek and its affiliates and clients.  In relevant part, the Arbitration Agreement provides, in bold font:

> **[A]ll disputes, claims, complaints, or controversies ("Claims") that I may have against Aerotek, Inc and/or any of its subsidiaries, *affiliates*, officers, directors, employees, agents, *and/or any of its clients or customers* (collectively and individually the "Company"), or that the Company may have against me, including contract claims; tort claims; *discrimination and/or harassment claims*; *retaliation claims; claims for wages, compensation, penalties or restitution*; and any other claim under any federal, state, or local statute, constitution, regulation, rule, ordinance, or common law, arising out of and/or directly or indirectly related to my application for employment with the Company, and/or my employment with the Company, and/or the terms and conditions of my employment with the Company, and/or termination of my employment with the Company (collectively "Covered Claims"), are subject to confidential arbitration pursuant to the terms of this Agreement and will be resolved by Arbitration and NOT by a court or jury.**

*Id.*, Ex. B, p. 1 (italicized emphasis added).  The Arbitration Agreement states that this agreement to arbitrate is in consideration for the "mutual promises" within the Arbitration Agreement.  *Id.*

The Arbitration Agreement further provides that arbitration is to be conducted pursuant to the employment arbitration rules of Judicial Arbitration and Mediation Services ("JAMS"); the arbitrator is required to render a written award after the arbitration hearing concludes; and Plaintiff is required to pay only filing or administrative fees up to the amount of the initial filing fee to commence an action in a Court that would otherwise have jurisdiction.  *Id.* at 1-2. Further, the JAMS rules establish that "[j]urisdiction and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper [p]arties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. … [T]he Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."  Rule 11 of the JAMS rules.  *See*

https://www.jamsadr.com/rules-employment-arbitration/english#Rule-11.[1]  The Arbitration Agreement further states that it is "governed by the FAA and, to the extent not inconsistent with or preempted by the FAA, by the laws of the state of Maryland without regard to principles of conflicts of law."  VanderHaar Decl., Ex. B, p. 2.

Plaintiff agreed that she had carefully read and understood the terms of the Arbitration Agreement.  *Id.*  She also acknowledged that she had been given the opportunity to consult an attorney.  *Id.*

### D. Plaintiff Ignored Her Agreement To Arbitrate And Filed This Lawsuit

Notwithstanding her agreement to arbitrate all claims she may have against Aerotek, its affiliates, and its clients, Plaintiff filed this lawsuit on December 8, 2022 seeking to litigate her claims against Defendants related to her employment with Aerotek and assignment at Abbott between August 3, 2020 and November 11, 2020.  Compl., Dkt. No. 1.  Plaintiff's Complaint includes claims of (1) unpaid overtime under the Fair Labor Standards Act ("FLSA"); (2) unpaid overtime under Maine's Minimum Wage Law; (3) retaliation under the FLSA; (4) violation of the Maine timely and full payment of wages law; (5) failure to provide mandated breaks; (6) quantum meruit; (7) unjust enrichment; (8) discriminatory treatment because of race in violation of 42 U.S.C. § 1981; (9) retaliation for engaging in protected activity under 42 U.S.C. § 1981; (10) discrimination in violation of 42 U.S.C. § 2000e-2 ("Title VII") (hostile work environment); (11) violation of the Maine Human Rights Act; (12) retaliation in violation of Title VII; (13)

---

[1] The Court may take judicial notice of the JAMS arbitration rules and procedures because they are matters "not subject to reasonable dispute."  *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 (1st Cir. 2010) (taking judicial notice of facts provided on government website); *see also Boustead Sec. LLC v. Unation, Inc.*, No. 8:22-CV-1329-CEH-CPT, 2023 WL 2374074, at *2 (M.D. Fla. Mar. 6, 2023) ("[a]rbitral rules are a proper subject of judicial notice under Federal Rule of Evidence 201(b)"); *Simon J. Burchett Photography, Inc. v. Maersk Line Ltd.*, No. 20CV3288GBDRWL, 2020 WL 8261580, at *6 (S.D.N.Y. Dec. 30, 2020) (taking judicial notice of rules in JAMS Comprehensive Arbitration Rules & Procedures).

retaliation in violation of the Maine Human Rights Act; and (14) violation of the Maine Whistleblower Protection Act. *Id.* Each claim is asserted against the Defendants collectively.

On March 22, 2023, counsel for Aerotek and the Allegis Defendants informed Plaintiff's counsel that Plaintiff had signed the Arbitration Agreement which applies to Plaintiff's claims against all Defendants, and emailed a copy of the Arbitration Agreement to Plaintiff's counsel. On April 13, 2023, Abbott's counsel sent Plaintiff's counsel an email stating that Abbott planned to file a motion to compel arbitration and asked if Plaintiff would agree to submit the matter to arbitration. To date, Plaintiff has not submitted the matter to arbitration, and therefore this Motion became necessary.

### III.   STANDARD OF REVIEW

Motions to compel arbitration under the FAA are evaluated in the same fashion as motions for summary judgment. *Casale v. Ecolab Inc.*, 585 F. Supp. 3d 99, 104 (D. Me. 2022) (citing *Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 175 (1st Cir. 2021). "The reviewing court considers all of the evidentiary materials before it and, construing the record in the light most favorable to the non-movant, determines whether a genuine dispute of fact exists regarding whether the parties agreed to arbitrate." *Id.* If the party moving to compel arbitration meets its initial burden to prove the existence of a valid arbitration agreement, the non-moving party must offer evidence supporting its own case. *Id.* The non-moving party cannot avoid arbitration by "'generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial.'" *Air-Con*, 21 F.4th at 175 n.8 (quoting *Soto v. State Indus. Prod., Inc.*, 642 F.3d 67, 72 n.2 (1st Cir. 2011)).

5

## IV.   ARGUMENT

### A.   Federal Law Mandates Enforcement Of The Arbitration Agreement

The FAA governs the enforcement of Plaintiff's Arbitration Agreement.  The FAA expressly provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . ., shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA reflects Congress's intent to create a "liberal policy favoring arbitration." *Rivera-Colon v. AT&T Mobility Puerto Rico, Inc.*, 913 F.3d 200, 207 (1st Cir. 2019) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011)). Questions of arbitrability must be addressed with a "healthy regard for this federal policy." *Casale*, 585 F. Supp. 3d at 104.  "In passing the FAA, Congress sought to place arbitration agreements upon the same footing as other contracts." *Air-Con*, 21 F.4th at 173.  As such, the FAA requires courts to treat arbitration as a "matter of contract" and enforce agreements to arbitrate "according to their terms." *Id.* at 173-74.

Courts will grant a motion to compel arbitration pursuant to the FAA when "(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration." *Gove v. Career Sys. Dev. Corp.*, 689 F.3d 1, 4 (1st Cir. 2012); *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008).

### 1.   Plaintiff Agreed to Arbitrate Her Claims In A Valid, Enforceable, Written Agreement to Arbitrate

The FAA provides that a written provision to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  "[P]rinciples of state contract law control the determination of whether

6

a valid agreement to arbitrate exists." *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 475 (1st Cir. 2011). Here, to the extent the Arbitration Agreement is not governed by the FAA, the Arbitration Agreement is governed by "the laws of the state of Maryland without regard to principles of conflicts of law." *See* VanderHaar Decl., Ex. B at 2. Thus, while the FAA governs the enforceability of the arbitration provision, Maryland law governs the Court's determination of whether a valid agreement to arbitrate exists.[2] *Alonso v. Am. Express Co.*, -- F. Supp. 3d --, 2023 WL 196619, at *5 (D. Me. Jan. 17, 2023) (enforcing Utah choice of law clause to determine validity of arbitration agreement); *Lupo, LLC v. Reynolds & Reynolds Co.*, 729 F. Supp. 2d 350, 353 (D. Me. 2010) (honoring Ohio choice of law clause in arbitration agreement).

Under Maryland law, formation of a contract requires manifestation of mutual assent and consideration. *Cochran v. Norkunas*, 919 A.2d 700 (Md. 2007); *Peer v. First Federal Sav. And Loan Ass'n of Cumberland*, 331 A.2d 299 (Md. 1975). Both are present here. Plaintiff expressly manifested her assent to be bound by the Arbitration Agreement by electronically signing it. Plaintiff signed the Electronic Disclosure Acknowledgment acknowledging that she agreed (a) to use an electronic signature to sign her pre-employment paperwork, (b) to all the terms, conditions, and policies in the pre-employment documents that she electronically signed, and (c) she would first read the pre-employment paperwork documents prior to electronically signing them. VanderHaar Decl., ¶¶ 15, 17, Ex. C. Plaintiff then electronically signed in acceptance of the Arbitration Agreement. *Id.* ¶ 32, Ex. B, p.2. Moreover, on the signature page of the

---

[2] The Arbitration Agreement would also be enforceable under Maine law. A valid contract exists under Maine law when the parties "mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite." *McClare v. Rocha*, 86 A.3d 22, 28 (Me. 2014) (quoting *Sullivan v. Porter*, 861 A.2d 625, 631 (Me. 2004). As explained herein, Plaintiff expressly manifested her consent and it is beyond reasonable dispute that the contract is "sufficiently definite."

7

Arbitration Agreement, Plaintiff expressly indicated that she had carefully read and understood the terms of the Arbitration Agreement, that she was entering into the Arbitration Agreement voluntarily, and that she had been given the opportunity to discuss the agreement with private legal counsel if she chose to do so. *Id.*, p. 2. Additionally, the Arbitration Agreement states that the parties "forever waive and give up the right to have a judge or jury decide any Covered Claims" and that Plaintiff "will be deemed to have consented to, ratified and accepted this Agreement through her acceptance of and continued employment with Aerotek." *Id.*, p. 1. After signing the Arbitration Agreement, Plaintiff proceeded to work for Aerotek, demonstrating her further assent to the Arbitration Agreement. Thus, Plaintiff both expressly and impliedly manifested her assent to be bound by the Arbitration Agreement.

Consideration is present because, among other things, the Arbitration Agreement contains mutual promises to arbitrate claims. *See Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 378 Md. 139, 153-54 (Md. 2003) ("[M]utual promises to arbitrate act as an independently enforceable contract . . . each party has promised to arbitrate disputes arising from and underlying contract, and each promise provides consideration for the other.") (internal citations omitted); *Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 377 (4th Cir. 1998) (applying Maryland law) ("a mutual promise to arbitrate constitutes sufficient consideration for the arbitration agreement."). The Arbitration Agreement itself also expressly states that it is in consideration of " the mutual promises therein." VanderHaar Decl., Ex. B, p. 1.

Indeed, Courts regularly hold that Aerotek's arbitration agreements which contain virtually identical language are valid and enforceable. *See, e.g.*, *Kaba v. Aerotek, Inc.*, No. 123CV00084JMSTAB, 2023 WL 2787958, at *3 (S.D. Ind. Apr. 4, 2023); *Taylor v. Unilever Mfg. (US), Inc.*, No. 220CV02803SHLATC, 2022 WL 2900280, at *1 (W.D. Tenn. June 10,

8

2022); *Pankey v. Defendant Hi-Tek Mfg., Inc.*, No. 1:18-CV-00702, 2019 WL 4242928, at *3 (S.D. Ohio Sept. 6, 2019). In short, Plaintiff clearly manifested her assent to be bound by the Arbitration Agreement, which is supported by valid consideration, and she cannot now deny her acceptance and acknowledgment of its terms.

### 2. The Arbitration Agreement Covers Plaintiff's Claims

If a claim is covered by an arbitration agreement, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts **shall** direct the parties to proceed to arbitration on issues" covered by the arbitration agreement. *Dean Witter Reynolds, Inc.*, 470 U.S. at 218 (emphasis in original). Furthermore, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Bosse v. New York Life Ins. Co.*, 992 F.3d 20, 31 (1st Cir. 2021); *Maine School Admin. District No. 68 v. Johnson Controls, Inc.*, 222 F. Supp. 2d 50, 53 (D. Me. 2002).

Plaintiff's claims are clearly within the scope of the claims she agreed to arbitrate. In the Complaint, Plaintiff asserts 14 claims against Defendants predicated on alleged wage and hour violations, discrimination, and retaliation that purportedly occurred during Plaintiff's employment with Aerotek and assignment at Abbott. These claims are unambiguously within the scope of the Arbitration Agreement. In the Arbitration Agreement, Plaintiff agreed to arbitrate "discrimination and/or harassment claims; retaliation claims; claims for wages, compensation, penalties or restitution; and any other claim under any federal, state, or local statute . . . directly or indirectly related to" her "employment with the Company," where "Company" is defined to mean Aerotek or any of its affiliates, clients, or customers.

Based on the foregoing, it is clear that Plaintiff's claims are within the scope of the arbitration agreement and must be arbitrated. *See MSAD No. 68 v. Johnson Controls, Inc.*, 222 F.Supp.2d 50, 55 (D. Me. 2002) (Under the FAA, "[t]he existence of a broad agreement to

arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") (quoting *Smith/Enron Cogeneration Ltd. P'ship. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999)). Moreover, employment arbitration agreements are properly enforced under the FAA, including claims based on state and federal human rights laws. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (holding that arbitration agreement compels arbitration of state statutory discrimination claims); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) (holding that arbitration agreement compels arbitration of claims under ADEA); *see also Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 7-11 (1st Cir. 1999) (holding that arbitration agreement compels arbitration of claims under Title VII). As such, this Court should compel arbitration. *See AT&T Tech., Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986) (holding arbitration should be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."); *see also MSAD No. 68*, 222 F. Supp. 2d at 55.

### 3. Defendants Have Not Waived Arbitration

Finally, Defendants have not waived their right to compel arbitration. After receiving Plaintiff's Complaint, Defendants have acted promptly by filing this Motion as their first responsive pleading.

### B. Abbott and the Allegis Defendants May Enforce The Arbitration Agreement

Abbott and the Allegis Defendants may invoke the FAA and compel Plaintiff to arbitrate her claims even though they are not signatories to the Arbitration Agreement. A non-signatory to an arbitration agreement may enforce the agreement in accordance with traditional state law principles such as assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver, and estoppel. *Arthur Andersen LLP v. Carlisle*, 556

10

U.S. 624, 631 (2009); *Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd.*, 325 F.3d 54, 63 (1st Cir. 2003) ("a non-signatory may be bound by or acquire rights under an arbitration agreement under ordinary state-law principles of agency or contract"). Here, the principles of third-party beneficiary entitlement and equitable estoppel compel Plaintiff to arbitrate her claims against Abbott and the Allegis Defendants.

    1.  **Abbott And The Allegis Defendants Are Third-Party Beneficiaries Of The Arbitration Agreement**

  Plaintiff must be compelled to arbitrate her claims against Abbott and the Allegis Defendants because they are express third-party beneficiaries of the Arbitration Agreement. Third-party beneficiary status is an exception to the general rule that a contract does not grant enforceable rights to non-signatories. *McCarthy v. Azure*, 22 F.3d 351, 362 (1st Cir. 1994). "The critical fact that determines whether a nonsignatory is a third-party beneficiary is whether the underlying agreement manifests an intent to confer specific legal rights upon the nonsignatory." *Ouadani v. TF Final Mile LLC*, 876 F.3d 31, 39 (1st Cir. 2017); *Thompson v. Witherspoon*, 197 Md. App. 69, 88, 12 A.3d 685, 696 (2011) (under Maryland law, a party may be a third-party beneficiary to a contract where "the contract's terms, in light of the surrounding circumstances, reveal an intent to make the promise to the third party in fact if not in form"); *Mountain Valley Prop., Inc. v. Applied Risk Servs., Inc.*, No. 1:15-CV-00187-DBH, 2015 WL 13729967, at *7 (D. Me. Dec. 22, 2015) (citing *Davis v. R C & Sons Paving, Inc.*, 2011 ME 88, ¶ 12, 26 A.3d 787, 790) (under Maine law, a third-party to a contract may be a beneficiary entitled to enforce contract provisions if that right was "within the expectation or intention of the parties to the contract").

  Here, the Arbitration Agreement reflects a clear intent to confer the right and benefit of arbitration on Abbott and the Allegis Defendants. The Arbitration Agreement plainly requires

Plaintiff to arbitrate all disputes against Aerotek and its "*affiliates*" and "*clients or customers*" relating to her employment. VanderHaar Decl., Ex. B, p. 1 (bold emphasis in original, italicized emphasis added). This language evidences a broad intent that Plaintiff be required to arbitrate claims against a variety of entities associated with Aerotek, not just Aerotek itself. To hold that only Aerotek can enforce the Arbitration Agreement and compel arbitration would render this language superfluous. Therefore, pursuant to the express terms of the Arbitration Agreement, Plaintiff should be compelled to arbitrate her claims against all Defendants. *See, e.g.*, *Herrera Gollo v. Seaborne Puerto Rico, LLC*, No. 15-1771, 2017 WL 657430, at *7 (D.P.R. Feb. 17, 2017) (non-signatory affiliate of Company could enforce arbitration agreement that covered all claims "against the Company, its shareholders or subsidiary or parent or affiliated companies" in any way relating to the plaintiff's application for employment); *Psara Energy, Ltd. v. Space Shipping, Ltd.*, 427 F. Supp. 3d 858, 859 (E.D. Tex. 2019) (plaintiff could be compelled to arbitrate its dispute with nonsignatory to charter agreement pursuant to broad arbitration clause which applied to "any dispute arising out of or in connection with" the agreement).

### 2.    Plaintiff is Equitably Estopped From Avoiding Arbitration With Abbott and the Allegis Defendants

Plaintiff is also equitably estopped from avoiding arbitration of her claims against Abbott and the Allegis Defendants because they are intertwined with her claims against Aerotek. "Equitable estoppel 'precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations.'" *Oudani*, 876 F.3d at 38.[3] Generally,

---

[3] While state contract law generally controls the determination of whether a valid agreement to arbitrate exists, nearly all federal circuit courts faced with the question have held that federal substantive law of arbitrability applies to the question of whether equitable estoppel allows a non-signatory to compel arbitration. *See Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004) (collecting cases). The First Circuit has not explicitly decided the question. But in any event, the result would be the same under Maryland law. *See Case Handyman & Remodeling Servs. v. Schuele*, 959 A.2d 833, 842 (Md. Ct. Spec. App. 2008), *vacated on other grounds*, 989 A.2d 210 (Md. 2010) (recognizing that equitable estoppel allows a non-signatory to compel arbitration

federal courts are willing to estop a signatory from avoiding arbitration with a non-signatory "when the issues to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Hogan v. SPAR Grp., Inc.*, 914 F.3d 34, 41 (1st Cir. 2019) (internal citations and quotations omitted).  Relevant here, application of equitable estoppel is warranted "when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999); *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 374 (4th Cir. 2012*)*; *Sanders v. Swift Transp. Co. of Arizona, LLC*, 843 F.Supp.2d 1033, 1037–1038 (N.D. Cal. 2012) (nonsignatory could compel arbitration under equitable estoppel where concerted misconduct alleged between signatory and nonsignatory).

      Courts routinely find that where plaintiffs fail to distinguish between defendants when asserting claims, they have effectively alleged "interdependent and concerted misconduct." *See, e.g.*, *Tissera v. NRT New England*, 438 F. Supp. 3d 115, 123 (D. Mass. 2020) (real estate agent was equitably estopped from avoiding arbitration of hostile work environment claims with nonsignatory colleague where agent raised allegations of substantially interdependent and concerted misconduct by both colleague and signatory employer); *Amstar Mtge. Corp. v. Indian Gold, LLC*, 517 F. Supp. 2d 889, 897 (S.D. Miss. 2007) (plaintiff estopped from avoiding arbitration with non-signatory where action was "averred against all defendants" and complaint was "littered with references of substantially interdependent and concerted misconduct" by all defendants).

---

when a signatory "raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract.").

Here, Plaintiff has lumped the Defendants together, asserting all 14 counts against Defendants collectively. The Complaint repeatedly refers to "Defendants" collectively, making it impossible to sever the alleged activity of one defendant from another.[4] *See, e.g.*, Compl. ¶ 42 ("***Defendants*** engaged in willful, knowing discrimination and retaliation against Ms. Woods on the basis of her race, color, ethnicity, and national origin, as well as her protected whistleblowing activity"); ¶ 46 ("***Defendants*** employed Plaintiff, and knowingly or willfully failed to pay her overtime wages"); ¶ 79 ("During Ms. Woods' employment, the ***Defendants*** engaged in unlawful discriminatory employment practices . . ."); ¶ 116 ("***Defendants*** took adverse action against Ms. Woods because of her protected whistleblower activity"). Further, Plaintiff expressly alleges that Defendants Allegis, AGS, and Aerotek were Plaintiff's "integrated and/or joint employer" based on their "interrelated ownership, management, and control." Compl. ¶ 8. To the extent she distinguishes between the Defendants at all, Plaintiff alleges that they acted in concert. *See, e.g.*, Compl. ¶ 55 ("Abbott discharged, discriminated, and/or took adverse action against her [sic] to which Aerotek, AGS, and Allegis Global [sic] did not remedy").[5]

Courts routinely apply the equitable estoppel doctrine to require employees of a staffing agency to arbitrate their claims against the staffing agency's client, a non-signatory to the agreement. *See, e.g, Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 874 (9th Cir. 2021) (compelling arbitration of wage and hour claims brought by plaintiff against staffing agency's client based on plaintiff's arbitration agreement with staffing agency); *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010) (plaintiff was required to arbitrate her employment discrimination claims against non-signatory defendant where she alleged she was

---

[4] In certain places, Plaintiff refers to "Defendant" but does not specify which Defendant. These appear to be typographical errors.

[5] Defendants do not admit or concede that they were integrated and/or are joint employers, had interrelated ownership, management, and control, or acted in concert with each other. Defendants are merely raising this equitable estoppel argument because Plaintiff has failed to distinguish among Defendants in her Complaint.

hired by her signatory employer to provide services for the non-signatory company and was required to follow the instructions and directives of the non-signatory company); *Bonner v. Michigan Logistics Inc.*, 250 F. Supp. 3d 388 (D. Ariz. 2017) (affiliate and customer of delivery logistics company could enforce arbitration agreements between delivery drivers and logistics company).

In short, Plaintiff's claims against Defendants are inextricably intertwined with one another. Thus, even if the Allegis Defendants and Abbott were not specifically identified as third-party beneficiaries (which they are), Plaintiff would nonetheless be estopped from avoiding arbitration with them.

### C. The Court Should Dismiss This Action Or, Alternatively, Stay This Action Pending Arbitration

The FAA provides that once a court determines that a dispute is referable to arbitration, the court shall stay judicial proceedings pending the outcome of arbitration. 9 U.S.C. § 3; *Commercial Union Ins. Co. v. Gilbane Bldg. Co.*, 992 F.2d 386, 387 (1st Cir. 1993). If all the issues before the court are arbitrable, the court may dismiss, rather than stay, the case. *Baker v. Securitas Sec. Servs. USA, Inc.*, 432 F. Supp. 2d 120, 127 (D. Me. 2006). The advantages of dismissal are well established:

> Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner provided by law. This course of action will also make the arbitrability issue immediately appealable and will avoid the litigation expenses and delay if the arbitration conducted were vacated by a later appeal.

*Garcia v. MaineGeneral Health*, No. 1:18-CV-00019-NT, 2018 WL 6071998, at *6 (D. Me. Nov. 20, 2018).

As explained above, all of Plaintiff's claims are covered by the Arbitration Agreement. Accordingly, the Court should dismiss this lawsuit. *See Garcia*, 2018 WL 6071998, at *6

15

(granting motion to compel arbitration of discrimination claims and dismissing case); *Curtis v. Contractor Mgmt. Servs., LLC*, No. 1:15-CV-487-NT, 2018 WL 6071999, at *11 (D. Me. Nov. 20, 2018) (granting motion to compel arbitration and dismissing plaintiffs' claims).  In the alternative, the Court should stay this action pending the outcome of the arbitration.

V.     **CONCLUSION**

For the foregoing reasons, Defendants respectfully move this Court to compel Plaintiff to arbitrate her claims and dismiss this action, or, alternatively, stay this action pending the outcome of arbitration.

***

Respectfully submitted,

**ABBOTT LABORATORIES, INC.,**

By its attorneys,

By: */s/ Christopher M. Pardo*
Christopher M. Pardo
HUNTON ANDREWS KURTH LLP
60 State Street, Suite 2400
Boston, MA 02109
Telephone: (617) 648-2800
Email: cpardo@HuntonAK.com

and

**AEROTEK, INC., ALLEGIS GROUP, INC., and ALLEGIS GLOBAL SOLUTIONS, INC.**

By their attorneys,

By: */s/ Glenn Israel*
Glenn Israel
BERNSTEIN SHUR
100 Middle Street
P.O. Box 9729
Portland, ME 04104-5029
Telephone: (207) 774-1200
Email: gisrael@bernsteinshur.com

and

Hillary L. Klein
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone: (816) 983-8000
Email: hillary.klein@huschblackwell.com

Dated: May 22, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on May 22, 2023.

　　　　　　　　　　　　　　　　　　　　　　*/s/ Glenn Israel*
　　　　　　　　　　　　　　　　　　　　　　Glenn Israel