UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| JAMAURA WOODS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:22-cv-00389-LEW |
| | ) |
| ALLEGIS GROUP, INC., ALLEGIS GLOBAL SOLUTIONS, INC., AEROTEK, INC., and ABBOTT LABORATORIES, INC., | ) ) ) ) |
| | ) |
| Defendants. | ) |

**ORDER ON DEFENDANTS' JOINT MOTION TO DISMISS
AND COMPEL ARBITRATION**

This matter comes before the Court on Defendants' Allegis Group, Inc., Allegis Global Solutions, Inc., Aerotek, Inc., and Abbott Laboratories, Inc.'s ("Defendants") Joint Motion to Dismiss and Compel Arbitration ("Motion," ECF No. 19). Pursuant to the Federal Arbitration Act (the "FAA"), Defendants move this Court for an order (1) compelling Plaintiff Jamaura Woods ("Plaintiff") to arbitrate all of the claims asserted in her Complaint and (2) dismissing this action or, in the alternative, staying these proceedings until arbitration is completed.

### BACKGROUND

The following facts are drawn from the Complaint (ECF No. 1) and are assumed to be true for purposes of Defendants' Motion to Dismiss.

Defendant Aerotek, Inc. ("Aerotek") offers temporary staffing services on a contract basis to various clients, including Defendant Abbott Laboratories, Inc. ("Abbott"). Defendant Allegis Group, Inc. ("Allegis") is an indirect parent company of Aerotek. Defendant Allegis Global Solutions, Inc. ("AGS") is a subsidiary affiliate of Allegis. Plaintiff was hired as a temporary employee by Aerotek in July of 2020. New Aerotek employees are required to electronically complete certain pre-employment paperwork. Plaintiff electronically signed an Electronic Disclosure Agreement and a Mutual Arbitration Agreement. Motion Exhibits A & B (ECF No. 19). Plaintiff executed the agreements on July 19, 2020. The following language is contained in the Arbitration Agreement:

> [A]ll disputes, claims, complaints, or controversies ("Claims") that I may have against Aerotek, Inc and/or any of its subsidiaries, affiliates, officers, directors, employees, agents, and/or any of its clients or customers (collectively and individually the "Company"), or that the Company may have against me, including contract claims; tort claims; discrimination and/or harassment claims; retaliation claims; claims for wages, compensation, penalties or restitution; and any other claim under any federal, state, or local statute, constitution, regulation, rule, ordinance, or common law, arising out of and/or directly or indirectly related to my application for employment with the Company, and/or my employment with the Company, and/or the terms and conditions of my employment with the Company, and/or termination of my employment with the Company (collectively "Covered Claims"), are subject to confidential arbitration pursuant to the terms of this Agreement and will be resolved by Arbitration and NOT by a court or jury.

Exhibit B.

On August 3, 2020, Aerotek placed Plaintiff at Abbott's Westbrook facility as a Production Specialist. Plaintiff's job duties at Abbott included creating and assembling Covid-19 rapid antigen tests. At all times during her employment, Plaintiff performed her job duties satisfactorily. Given the high demand for rapid antigen tests, Plaintiff was asked

2

to work overtime on many occasions, and she worked this overtime often enough that she was eligible for a bonus in September and October of 2020.

Plaintiff is an African American woman and a vast majority of her coworkers at Abbott were also people of color, many of whom spoke English as a second language or had a limited understanding of the English language. The Production Specialists worked long hours and were often denied the fifteen minute and thirty-minute breaks they were entitled to by law if they did not meet unfeasible quotas. The employees were also denied bathroom breaks, making some employees resort to urinating in closets. Abbott also required Plaintiff and other workers on occasion to work after their shift without pay. Often these violations of law occurred in retaliation for employees complaining about the lack of breaks or the working conditions.

Plaintiff reported to an Abbott manager concerns that many of the Covid-19 tests assembled did not meet quality standards. She also told the manager about the poor working conditions, such as not being allowed to take breaks, and that employees were being threatened and screamed at daily to stop complaining about breaks or they would be fired. Additionally, Plaintiff reported that employees were in fear of further reporting issues to management because if they complained they were required to stay past their scheduled shift.

In September, Plaintiff made a specific and direct complaint to a supervisor at Abbott about the pay practices, noting that she was not paid the full amount for the hours that she worked. After these complaints, management treated Plaintiff poorly in front of line leaders and her coworkers. When nothing was done to correct her missing pay,

3

Plaintiff elevated her complaint to the supervisor's supervisor. In response, Plaintiff was told that if she continued to complain about her missing pay, she would be fired. In addition to complaining to supervisors and management at Abbott, Plaintiff also reported these workplace issues to Aerotek and received no response. Despite the threats of termination, Plaintiff then reported the missing pay to Human Resources. Abbott terminated Plaintiff the following day.

Plaintiff claims that Defendants engaged in willful, knowing discrimination and retaliation against her based on her race, color, ethnicity, and national origin, as well as her protected whistleblowing activity. Plaintiff claims that she was terminated in retaliation for opposing a practice made unlawful by the Fair Labor Standards Act, Title VII, Section 1981, and state law equivalents. Plaintiff also brings claims of discrimination and for violation of federal and state wage payment laws.

Defendants filed a Joint Motion to Dismiss and Compel Arbitration (ECF No. 19). Plaintiff did not respond to this Motion.

## DISCUSSION

Defendants argue that Plaintiff's claims fall squarely within the broad scope of the Arbitration Agreement and, therefore, are subject to binding arbitration.

While federal policy favors arbitration, the Federal Arbitration Act (FAA) highlights that arbitration is a matter of contract. *Soto v. State Indus. Products, Inc.*, 642 F.3d 67, 72 (1st Cir. 2011); *see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). When considering a motion to compel arbitration, a court must decide whether "(i) there exists a written agreement to arbitrate, (ii) the dispute falls within

4

the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration." *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008) (quoting *Bangor Hydro–Electric Co. v. New England Tel. & Tel. Co.*, 62 F.Supp.2d 152, 155 (D. Me.1999).

Arbitration being a creature of contract, "principles of state contract law control the determination of whether a valid agreement to arbitrate exists." *Campbell v. General Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 552 (1st Cir. 2005). The Arbitration Agreement includes a provision that states that the agreement is governed by the laws of the State of Maryland without regard to principles of conflicts of law. So while the FAA governs the enforceability of the Agreement, Maryland law governs the determination of whether a valid agreement to arbitrate exists. *See Alonso v. Am. Express Co.*, 2:22-CV-00132-JAW, 2023 WL 196619 at *5-6 (D. Me. Jan. 17, 2023).

Maryland contract law requires manifestation of mutual assent and consideration for valid formation. *Cochran v. Norkunas*, 919 A.2d 700, 708 (Md. 2007). Defendants argue that both requirements are present, pointing to Plaintiff manifesting her assent to be bound by the Arbitration Agreement through electronic signature[1] and the Arbitration Agreement's mutual promises to arbitrate claims.[2] Plaintiff offers no argument or evidence to lead me to believe that a valid agreement to arbitrate does not exist.

---

[1] The signature page of the Agreement (ECF No. 19, Ex. B) expressed that Plaintiff had carefully read and understood the terms of the Arbitration Agreement, that she was entering into the Arbitration Agreement voluntarily, and that she had been given the opportunity to discuss the agreement with private legal counsel if she chose to do so.

[2] "[A] mutual promise to arbitrate constitutes sufficient consideration for the arbitration agreement." *Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 377 (4th Cir. 1998) (applying Maryland law).

As to the enforceability of the Agreement under the FAA, Defendants argue that Plaintiff's claims are unambiguously within the scope of the Agreement because they are predicated on alleged wage and hour violations, discrimination, and retaliation that occurred during Plaintiff's employment with Aerotek and assignment at Abbott. The Arbitration Agreement stated that the parties would arbitrate "discrimination and/or harassment claims; retaliation claims; claims for wages, compensation, penalties or restitution; and any other claim under any federal, state, or local statute . . . directly or indirectly related to" Plaintiff's "employment with the Company." An arbitration agreement that is governed by the FAA is presumed to be valid and enforceable, thus the party that is resisting arbitration bears the burden of showing that such an agreement is invalid or does not encompass the claims at issue. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000). Again, Plaintiff has offered no argument or evidence that these claims do not fall within the scope of the Agreement.

Additionally, Plaintiff has not pointed to any instance of Defendants waiving their right to arbitration. To the contrary, Defendants promptly filed this Motion to Compel Arbitration as their first responsive pleading following receipt of Plaintiff's Complaint. For these reasons, I order Plaintiff to seek relief through arbitration.

Finding these issues arbitrable, the remaining question is whether this matter should be stayed or dismissed. Judge Hornby cited the following advantages of dismissal:

> Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law. This course of action will also make the

arbitrability issue immediately appealable and will avoid the litigation expenses and delay if the arbitration conducted were vacated by a later appeal.

*Boulet v. Bangor Securities Inc.*, 324 F. Supp. 2d 120, 127 (D. Me. 2004) (citing *Bangor Hydro–Electric Co.*, 62 F.Supp.2d at 161 n. 9 (quoting *Sea–Land Serv., Inc. v. Sea–Land of P.R., Inc.*, 636 F.Supp. 750, 757–58 (D.P.R. 1986)). *See also Baker v. Securitas Sec. Services USA, Inc.*, 432 F. Supp. 2d 120, 127 (D. Me. 2006) (Woodcock, J.) (staying rather than dismissing case based on parties' mutual request, but observing that dismissal was otherwise more appropriate given that, "[i]f the parties arbitrated and then returned to this Court, they would do so under markedly different legal theories and standards."). I find that these considerations militate in favor of dismissal.

## CONCLUSION

Defendants' Motion to Dismiss and Compel Arbitration (ECF No. 19) is GRANTED. This matter is dismissed without prejudice and Plaintiff is compelled to arbitrate her claims in lieu of litigating them in this civil action.

**SO ORDERED.**

Dated this 5th day of July, 2023.

                                            /s/ Lance E. Walker
                                            UNITED STATES DISTRICT JUDGE